**SO ORDERED.**

**SIGNED this 4 day of October, 2013.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

IN RE:

S&R GRANDVIEW, LLC,                                          **CHAPTER 11**
                                                            **CASE NO. 13-03098-8-RDD**

      DEBTOR

## ORDER GRANTING MOTION TO DISMISS CASE

Pending before the Court is the Motion for Order Dismissing Bankruptcy Case filed by Maxine Ganer on July 31, 2013, the Response in Support of Motion for Order Dismissing Bankruptcy Case filed by First Bank on August 8, 2013, and the Response in Opposition to Motion for Order Dismissing Bankruptcy Case filed by S&R Grandview, LLC (the "Debtor") on August 26, 2013. The Court conducted a hearing on this matter on August 28, 2013, in Wilson, North Carolina.

## BACKGROUND

The Debtor was organized in August of 2005. The Debtor was organized for the purposes of investing, owning, holding, developing, and/or selling real estate.

Donald J. Rhine, in his named capacity as manager of the Debtor, filed a voluntary petition for relief under Chapter 11 of the United States Code (the "Bankruptcy Code") on behalf of the Debtor on May 13, 2013. In the Statement of Financial Affairs seven members of the Debtor are

listed. An attachment to the Statement of Financial Affairs states that Mr. Rhine "does not at present know the precise identity and membership interest of the members. There have been several instances of change of ownership due to inheritance or sale." The Articles of Organization provide that the Debtor is a member-managed limited liability company and that all members by virtue of their status as members shall be managers of the limited liability company. Mr. Rhine's membership interest constitutes nineteen percent of the total membership interests of the Debtor. Ms. Ganer is a member of the Debtor.

Ms. Ganer does not consent to the filing of the petition. Ms. Ganer represents that she is a member of the Debtor and contends that Mr. Rhine lacked authority to file the petition on behalf of the Debtor and requests that the case be dismissed.

## DISCUSSION

In determining whether an individual is properly authorized to institute a bankruptcy proceeding on behalf of a legal entity, courts look to state law. *In re Surf City Investments, LLC*, No. 11-01398-8-RDD, 2011 WL 5909489 *2 (Bankr. E.D.N.C. May 6, 2011) (citing *In re Cabernet Holdings LLC*, No. 10-50602C-11, 2010 WL 2540115 *2 (Bankr. M.D.N.C. June 21, 2010) (citing *Hager v. Gibson*, 108 F.3d 35, 39 (4th Cir. 1997))). Management of a limited liability company is vested jointly in all members, unless the company's articles of organization or written operating agreement provide otherwise. N.C. Gen. Stat. § 57C-3-20; *In re Surf City Investments, LLC*, 2011 WL 5909489 *3, Case No. 11-01398-8-RDD. A bankruptcy court cannot establish jurisdiction over a petitioning entity where the individual instituting the proceeding lacks authority under state law or the corporate governing instruments. *Id.* (citing, *Price v. Gurney*, 324 U.S. 100, 106 (1945).

Section 6.01(a) of the Debtor's Operating Agreement (the "Operating Agreement") provides "[t]he power of the [Debtor] shall be exercised by, or under the authority of, and the business and affairs of the [Debtor] shall be managed under, its designated Managers, . . ."

Operating Agreement. Sec. 6.01(a), Ex. A, at13.

Section 6.01(b) provides that notwithstanding Section 6.01(a),

the Managers may not cause the [Debtor] to do any of the following without complying with the applicable requirements set forth below: (i) sell, lease, exchange, or otherwise dispose of (other than by way of a pledge, mortgage, deed of trust or trust indenture) all or substantially all of the [Debtor's] property and assets (with or without goodwill), other than in the usual and regular course of the [Debtor's] business unless approved by the Majority Interest.

Operating Agreement. Sec. 6.01(a), Exhibit A, at 14.

"Majority Interest" is defined in the Operating Agreement as "one or more Members having among them more than 50% of the Sharing Ratios of all Members."

Operating Agreement. Sec. 1.01, Exhibit A, at 2.

In December of 2005, the Operating Agreement was amended to provide that "any requirement of a majority vote is hereby amended to require a vote of 60% of the members." Amendment to S&R Grandview, LLC Operating Agreement. Para. 9, Exhibit B, at 2.

Section 6.01(a) of the Operating Agreement also provides

[i]n addition to the powers and authorities expressly conferred by this Operating Agreement upon the Managers, the Managers may exercise all such powers of the [Debtor] and do all such lawful acts and things as are not directed or required to be exercised or done by the Members pursuant to the [North Carolina Limited Liability Company Act, Chapter 57C of the North Carolina General Statutes], the Articles of Organization, or this Operating Agreement.

Operating Agreement. Sec. 6.01(a), Exhibit A, at 13.

3

Pursuant to North Carolina General Statute § 57C-3-03(3), approval of all members is required to "[s]ell, transfer, or otherwise dispose of all or substantially all of the assets of the limited liability company prior to the dissolution of the limited liability company." N.C. Gen. Stat. § 57C-3-03(3).

Section 6.02 of the Operating Agreement provides that in managing the business and affairs of the Debtor, the Managers "shall act (i) collectively through meetings and written consents pursuant to Sections 6.05 and 6.07; (ii) through committees pursuant to Section 6.02(b); and (iii) through Managers to whom authorities and duties have been delegated pursuant to Section 6.02(c)." Operating Agreement. Sec. 6.02, Exhibit A, at 14.

Section 7.05(a) of the Operating Agreement provides:

[a]ny action required or permitted to be taken at any annual or special meeting of Members may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holder or holders of not less than the minimum Sharing Ratios and Members that would be necessary to take such action at a meeting at which the holders of all Sharing Ratios entitled to vote on the action were present and voted.

Operating Agreement. Section 7.05(a), Exhibit A, at 20.

In a letter dated April 19, 2011, Mr. Rhine provided a financial update of the Debtor and included a document entitled "Consent to Action by Member of S&R Grandview, LLC Without Meeting," (the "Written Consent"). In the letter, Mr. Rhine requested "necessary authority" to act on behalf of the Debtor in dealing with First Bank.  The Written Consent attached to the letter requested members to authorize Mr. Rhine to enter into "discussions and negotiations, and execute such contracts, agreements and other instruments on behalf of the [Debtor], as its Manager, without the necessary joinder or consent of any other Manager." Exhibit AA. The letter and Written Consent

4

do not include any information as to which members of the Debtor actually received the documents. The Written Consent was approved by 52.75000% of the Sharing Ratios of the Debtor.

Subsequently in a letter dated April 22, 2011 addressed to First Bank, Mr. Rhine states:

I have been the primary manager with responsibility for all sales activity and keeping the development known as Eagle's Watch viable in difficult times. There is a second appointed manager who resides in New York. This fact should not impact our ability to function in a normal business manner where one of the managers negotiates the terms of a proposal with the understanding that the final terms will be subject to approval by all of the necessary parties on both sides.

Exhibit W, at 1.

In December of 2011, a Memorandum of Mediated Settlement (the "Memorandum") was filed in the case *First Bank v. S&R Grandview, LLC, et al*, 11 CVS 74 (Montgomery County, Superior Court Division, December 6, 2011). A Settlement Agreement and Release was also executed in conjunction with the Memorandum (the "Settlement Agreement."). The Settlement Agreement resolved a lawsuit filed by First Bank against the Debtor and six guarantors. The Settlement Agreement required the Debtor to execute a General Warranty Deed to convey substantially all of the Debtor's property and assets to First Bank in return for full settlement of all of the Debtor's obligations to the Bank and dismissal of the lawsuit First Bank had filed (11 CVS 466). The Settlement Agreement provides the agreement was ratified by the members of the Debtor.

On February 29, 2012, the Honorable William R. Pittman, Pender County Superior Court Judge, entered a Temporary Restraining Order restraining Mr. Rhine from among other things, "selling, transferring, disposing, encumbering or conveying, in whole or in part any asset of [the Debtor] . . . without the prior written consent of Defendant Maxine Ganer." *Rhine v. Maxine J. Ganer & S&R Grandview, LLC*, 12 CVS 43 (Pender County Superior Court Division, March 7, 2012).

By letter dated March 28, 2012, Ms. Ganer and Mr. Rhine agreed to extend the Temporary Restraining Order until such time as a trial is held and judgment entered on the pending claims in a state court lawsuit between the parties pending in Pender County, North Carolina. As of the hearing date the lawsuit remained pending.

On July 18, 2012, the Honorable W. Allen Cobb, Jr., Superior Court Judge presiding over the July 16, 2012, civil session of Pender County Superior Court, entered an Order dismissing the appeal of a foreclosure action which Mr. Rhine initiated as the Manger of the Debtor. Judge Cobb found that "Donald J. Rhine is a Manager of S&R Grandview, LLC, but is not the sole manager of S&R Grandview, LLC, that joint action by the co-managers of the LLC is required, that the co-manager of S&R Grandview, LLC has not authorized this appeal, that accordingly, Donald J. Rhine has no standing to bring this appeal, and the Court further finds that the appeal is frivolous and should be DISMISSED." *In re Foreclosure of the Deed of Trust executed by S&R Grandview, LLC, recorded in Deed of Trust Book 3097, Page 90, Pender County Registry*, 11 SP 377 (July 18, 2012).

On February 26, 2013, First Bank, obtained a Charging Order against Mr. Rhine in the North Carolina General Court of Justice, Superior Court Division, Montgomery County. The Charging Order provides, in part, that Mr. Rhine's membership interest in the Debtor is charged with payment of the unsatisfied amount of First Bank's judgment. The Charging Order further provides that "[u]ntil such time as the full amount of the Judgment has been paid to First Bank, Defendant D. Rhine shall be enjoined from exercising any of the rights of a member of S&R Grandview, L.L.C." *First Bank v. S&R Grandview, et al*, 11 CVS 74 (Montgomery County, Superior Court Division February 26, 2013). The parties reported at the hearing that Mr. Rhine appealed the Charging Order and that the matter was still pending on appeal.

6

Section 1112(b) of the Bankruptcy Code provides:

[o]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and of the estate, for cause unless the court determines that the Court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interest of creditors and the estate.

11 U.S.C. § 1112(b).

The Court finds that sufficient cause exists to dismiss the Chapter 11 petition. Mr. Rhine does not have authority to file a bankruptcy petition on behalf of the Debtor. Even if Mr. Rhine had obtained the required consent of sixty-percent of the members as to the Written Consent, the Written Consent was obtained in April of 2011, and did not give Mr. Rhine authority to file a bankruptcy petition on behalf of the Debtor. At no point did the members authorize Mr. Rhine to act without consent of the members to file a bankruptcy petition in May of 2013. Further, the state superior court has previously held that Mr. Rhine does not have authority to act alone as manager of the Debtor and res judicata applies. *Merrill Lynch Business Financial Services, Inc. v. Cobb*, 2008 WL 6155804 (E.D.N.C. March 18, 2008) (noting that issues determined at a foreclosure hearing as to validity of debt and a trustee's right to foreclose are subject to res judicata and cannot be relitigated); *Suntrust v. Busby*, 469 Fed.Appx. 205 (4th Cir. 2012) (stating that the doctrine of res judicata applies "not only to the points upon which the court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject in litigation and which the parties, [e]xercising reasonable diligence, might have brought forward at the time and determined respecting it." citation omitted). The Charging Order provides that Mr. Rhine is enjoined from "exercising any of the rights of a member" of the Debtor. *First Bank v. S&R Grandview, et al*, 11 CVS 74 (Montgomery County, Superior Court Division February 26, 2013).

7

Therefore, Mr. Rhine is not authorized under the terms of the Operating Agreement and under North Carolina state law to file a petition on behalf of the Debtor and cause exists to dismiss the bankruptcy petition.  Accordingly, the bankruptcy case is hereby **DISMISSED.**

**SO ORDERED**.

**END OF DOCUMENT**